IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JAYTE RYAN WELCH,

    Plaintiff,

v.

CARDINAL I.G.,

    Defendant.

OPINION and ORDER

Case No.  19-cv-1-wmc

---

JAYTE RYAN WELCH,

    Plaintiff,

v.

ABR STAFFING,

    Defendant.

Case No.  19-cv-6-wmc

---

JAYTE RYAN WELCH,

    Plaintiff,

v.

CARDINAL I.G.,

    Defendant.

Case No.  19-cv-827-wmc

---

Plaintiff Jayte Ryan Welch is proceeding *pro se* in these consolidated lawsuits under the Americans with Disabilities Act, 42 U.S.C. § 12112(a).  In September and October of 2018, Welch was employed by defendant American Business Resource Corporation d/b/a ABR Employment Services ("ABR") and placed as a temporary worker at defendant

1

Cardinal. At the end of October, Cardinal requested that ABR Staffing remove Welch from his position, which ABR proceeded to do and then terminated his employment. Welch claims that he was terminated because of a disability, and that Cardinal subsequently lodged a false police report against him after he threatened to sue for disability discrimination. The court granted Welch leave to proceed with his disability discrimination claim against both Cardinal and ABR Staffing, and a retaliation claim against Cardinal. (Dkt. #4.)[1]

Now before the court are the parties' cross motions for summary judgment (dkt. ##16, 23, 36), and Welch's motion for a hearing (dkt. #50). For reasons explained in this opinion, the court concludes that the undisputed evidence of record does not permit a reasonable jury to find that: (1) Welch was disabled within the meaning of the ADA in 2017 or 2018; (2) his termination was caused in whole or part by any arguable disability; and (3) Cardinal retaliated against him for threatening suit. Therefore, the court will grant defendants' motions for summary judgment, deny plaintiff's motions, and direct the clerk to enter final judgment in defendants' favor in each of these cases.

UNDISPUTED FACTS[2]

A. Parties

Plaintiff Jayte Welch resides in Wisconsin and claims to have been disabled within the meaning of the ADA during the relevant period of employment by ABR. Defendant

---

[1] For ease of reference, all citations in this opinion are to filings in Case No. 19-cv-827-wmc.

[2] Unless otherwise indicated, the following facts are undisputed. The court has drawn these facts from the parties' proposed findings of fact and responses, as well as the underlying evidence as

2

ABR is a temporary staffing agency that places workers on short-term assignments at its clients' facilities, including at Cardinal's glass manufacturing plant located in Tomah, Wisconsin. Defendant Cardinal has an agreement with ABR to assign its employees to perform that work with the understanding that ABR recruits, screens, interviews and hires these employees, then places them at Cardinal's plant.

### B. Evidence of Welch's Health Conditions and Employment with Cardinal

In support of his claim of disability, Welch submits evidence that in September of 2018, he suffered from a chronic wound on his neck and suffered a series of skin infections. He further represents that in 2017, he had developed endocarditis from a bacterial infection. (*See* dkt. #28-3, at 8.) Welch represents that he also suffers from respiratory issues that limit his cardiovascular activities.

Starting September 25, 2018, Welch was employed by ABR, and the following day, September 26, ABR assigned him to work at Cardinal. However, between October 1 and October 30 of 2018, Welch was absent, tardy or left early from his work assignment at Cardinal a total of 14 times. Specifically, Cardinal contemporaneously recorded attendance issues as follows:

> October 1:  Left for court in the morning and returned in the afternoon.
> October 6:  Tardy.

---

appropriate. Unfortunately, Welch's responses to defendants' proposed findings of fact did not follow this court's procedures: he often failed to cite admissible evidence to support his factual contentions and designated certain facts undisputed while purporting to add facts. To account for Welch's *pro se* status, the court has attempted to consider all material evidence and evidence that would be admissible at trial, including those statements made that could reasonably be viewed as within his knowledge or be reasonably inferred in his favor. That said, the court has not considered Welch's statements that did not respond to defendants' proposed findings of fact or could not have been within his personal knowledge or reasonably inferred.

>October 7:   Tardy because he overslept and was running late.
>October 13:  Tardy because he had to bike, and he left work early.
>October 15:  Tardy.
>October 19:  Tardy.
>October 20:  Tardy, left work at noon, later left a voicemail about a medical issue.
>October 21:  Absent with no call.
>October 24:  Tardy.
>October 25:  Tardy.
>October 29:  Absent, called in about car issues.
>October 30:  Absent, called in about health issues.

(*See* Cardinal Ex. B (dkt. #16-2).)

The day after Welch's October 21 absence, he apparently left a voicemail relaying that he had to bike to a pharmacy, was out of breath, and so, went to the doctor and obtained an absence note. Welch claims that he also had a doctor's note for his October 22 and 23 absences (dkt. #34, at 6; dkt. #31-3, at 9), but Welch was not recorded absent or tardy on either of those days, perhaps because he was excused by a doctor. Moreover, the doctor's note Welch received on October 22 did not state the reason why he was excused from work; and Welch does not attest he notified anyone at Cardinal or ABR that the note was an indicator of a problem, much less one requiring further accommodation beyond October 22 and 23.

Further, on October 22, Cardinal employee Donna Taylor wrote to ABR that Welch's perpetual tardiness was an issue and that ABR should consider coaching him to leave earlier to arrive at work on time. In that communication, the Cardinal employee also noted that Welch may have been "having issues with his upper respiratory lately," which caused him to be late when he would bicycle to work. (Klass Decl. (dkt. #16) ¶ 9.) That same day, an ABR employee tried to leave Welch a voicemail to warn him about his

4

attendance issues. However, his voicemail box was full, so the employee sent Welch an email communicating with that warning.

Of course, as reflected in the summary above, Welch's attendance did not improve the following week. Not only was he tardy October 24 and 25, but he was absent altogether because of "car issues" on October 29 and "health issues" on October 30. As a result, on October 30, Cardinal contacted ABR to say that due to Welch's ongoing absences, Cardinal wanted to end his work assignment. Specifically, Taylor wrote:

> Jayte has had many attendance problems since he started with Cardinal and we do not feel we can accommodate him. He has had 12 tardies and time missed just in the month of October. The tardiness were only a few minutes, but he has 5 times for court or sick. Please contact him and let him know we are ending his assignment.

(*See* '827, dkt. #31, at 2.) The next day, an ABR employee spoke to Welch and explained that he was also being terminated due to absenteeism. No other ABR employees with more than 10 absences or instances of tardiness in their first month have been allowed to continue their employment.

That same day Welch called Cardinal Supervisor Donald Kemnitz to discuss his termination and what he felt was sexual discrimination. Welch now also represents that he also intended to provide more doctor's notes to excuse his absence and to mention disability discrimination, but he has not attested to that fact, and *no* evidence shows that he made statements about discrimination other than of a sexual nature during this call. Welch also brought up lawsuits he had filed against various companies in the past. While Kemnitz affirmatively denies that Welch mentioned disability discrimination, he

5

acknowledges that he responded Welch was "free to do whatever he felt he needed to do." (Klass Decl., Ex. C (dkt. #16-3.)

Finally, Welch did not inform ABR or Cardinal of a disability that would require an accommodation to perform his responsibilities on the job with Cardinal or for other of ABR's clients, nor did he explicitly ask for an accommodation. Instead, Welch represents that Cardinal employees were "aware" that he dealt with respiratory issues. Welch further states that he asked to be moved to a different position and schedule, but he submits no details about those communications. Welch also claims to have been taking certain medications during his assignment at Cardinal that required him to go into work late, but again submits no evidence that he actually communicated those details to anyone at Cardinal or ABR. Similarly, Welch now represents that if he did not take it his medication and wait for it to work, he would spend the day vomiting without identifying the conditions his medication treated, nor offering any evidence that he informed anyone at Cardinal or ABR about his need to arrive late to ensure his medications were working.

## C. Post-termination Interactions Between Welch and Cardinal

On November 21, 2018, Welch filed a charge of discrimination against Cardinal, alleging disability discrimination. The EEOC issued a dismissal and notice of rights on December 3, 2018. Welch claims that representatives of Cardinal retaliated against him for pursing a disability claim, as well as for threatening to file complaints with the Office of Federal Contract Compliance Programs ("OFCCP") and EEOC.

On December 7, 2018, he issued a demand letter to Cardinal, which included the following statement: "I intend to notify the news media if you fail to settle or response [sic]

6

by the end of December 27, 2018." (Klass Decl., Ex. D (dkt. #16-4).) The letter also included a doctor's note, which was the first such note Welch had provided to Cardinal. The entirety of that note read as follows: "Jayte Welch was seen and treated in our Emergency Department on 10/30/2018. He may return to work on 10/30/2018." (*Id.*)

On December 14, 2018, Welch spoke with Cardinal's counsel, David Waytz, about a possible resolution, to which Waytz indicated he would respond by December 27, then later that afternoon, Welch left an over four-minute, voice mail for Waytz, asserting that Cardinal caused him health and personal issues and reiterating his demand for payment. On December 17, 2018, Welch next sent a second, lengthy letter demanding a specific payment and stating his intent to file a lawsuit. For the first time, Welch also specifically represented that his repeated tardiness at Cardinal was due to his riding a bike to work with "valvular heart disease" and "reduced airspace deficiencies," and he expressed the belief that a person with a disability can never be terminated for absenteeism. (Dkt. #16-4.) Waytz responded that Cardinal was planning to respond by December 27, as previously discussed, and Welch could wait or not wait for that response.

On December 21, Welch responded that he was going to file a complaint with various state agencies, while also stating, "I urge you to comply with my request." (Waytz Decl., Ex. 3 (dkt. #17-3), at 4.) That night, Welch further sent Waytz pictures of documents, stating, "Not to[o] much if weird of this hits the media they will see a large number of complaints filed. Monkey see monkey do." (*Id.* at 5.) On December 24, Welch sent yet another email that included threats to (among other things):

- "file a complaint with the office of federal contractor compliance program because you're in violation of that program laws";

7

- "add [a multiple of the] dollars that I had requested for the EEOC complaint" because "[t]here are numerous other agencies that I can collect lots of rewards through the national labor relations Board, OSHA . . . .";

- "find a federal contract somewhere," which "only the [Office of Federal Contract Compliance Programs] can confirm ... and I really don't think you want me to file my complaints with that agency, as well the equal [r]ights unit of Wisconsin"; and

- "save your client from p[]otential disaster, so to speak from, internal affairs investigations of numerous sorts from federal and government agencies."

(Dkt. #17-4.)

Cardinal interpreted Welch's actions as extortion, not negotiation, and it decided the safest course of action was to contact law enforcement. In the meantime, Welch's communications to Cardinal continued. Specifically, on the December 27 response deadline, he left a voicemail with Waytz stating, among other things, that he was going to "open up a can of worms on your company" and Cardinal had "less than three hours to get this done . . . your time is running out." (Waytz Decl. (dkt. #17) ¶ 9; Ex. 5 (dkt. #17-5).) Cardinal responded that the company considered his statements to be extortion under Wisconsin law, and that it intended to contact law enforcement. Welch denied trying to extort Cardinal.

On December 31, Welch sent a lengthy email, explaining that some of his confusing communications had been the result of autocorrect on his phone. On January 2, 2019, Welch filed his first complaint in this court, alleging that Cardinal discriminated against him due to his disability.

In January of 2019, Cardinal contacted the Tomah police department, raising concerns about Welch's conduct. The Tomah Police Department asked Cardinal to

provide Welch's correspondence with Waytz, which Cardinal provided. The Tomah Police Department investigated for about a month. The matter was then referred to the district attorney, although charges were not pursued because the district attorney did not believe he could meet the burden of proof for extortion.

On April 9, 2019, Welch filed a second charge with the EEOC, alleging that Cardinal retaliated against him by accusing him of a crime and calling the police on him. On July 22, 2019, the EEOC issued a dismissal and notice of rights on that retaliation claim. Welch filed his second two lawsuits in this court in October 2019.

OPINION

Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If there is any genuine issue as to any material fact, the court cannot grant summary judgment. *Id*. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Finally, "[t]he evidence of the non-movant[s] is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Id*. at 255. While all parties each seek summary judgment on Welch's ADA discrimination and retaliation claims, the court will address each claim in turn using the more favorable standard to plaintiff.

9

I.  **ADA Discrimination**

The ADA prohibits employers from discriminating against employees with disabilities who are otherwise qualified. 42 U.S.C. § 12112(a). The Act is concerned with discrimination in all phases of employment, including the application process, hiring, advancement, and discharge of employees, as well as employee compensation, job training, and other terms, conditions, and privileges of employment. *Id.* In order to prove disability discrimination under the ADA, plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of the job either with or without a reasonable accommodation; and (3) he suffered from an adverse employment action because of his disability. *Nese v. Julian Nordic Construction Co.*, 405 F.3d 638, 641 (7th Cir. 2005). Even being generous to Welch as a *pro se* litigant, he has simply not met this burden.

First, while Welch argues the evidence of record proves discrimination on the basis of his disability, both defendants rightly point out a lack of any evidence of record suggesting that Welch even suffers from a qualifying disability, much less that they were aware of that disability. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities . . . ; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). A person with an impairment that substantially limits a major life activity is disabled even if the impairment is "transitory and minor." *Id.* However, "it is not enough for plaintiff to simply *say* that []he has certain ailments without explaining the nature of those ailments and how they substantially limit [him] in one or more major life activities."

10

*Bluestein v. Cent. Wis. Anesthesiology, S.C.*, 986 F. Supp. 2d 937, 946 (W.D. Wis. 2013), *aff'd*, 769 F.3d 944 (7th Cir. 2014) (emphasis added).

Here, Welch submits evidence that: (1) he suffers from respiratory issues; and (2) Cardinal regarded him as having respiratory issues. As an initial matter, the record of what Cardinal knew about Welch's condition is quite thin. At most, a jury could find some Cardinal employee(s) may have been aware that on more than one occasion, Welch was late or absent because he was dealing with breathing issues during his commute by bicycle. However, Welch's periodic difficulties breathing while exercising is not enough to find a substantial impact on major life activities. *See Fredricksen v. United Parcel Serv. Co.*, 581 F.3d 516, 522 (7th Cir. 2009) ("Although Fredricksen may occasionally get winded when walking up stairs or grow tired while grocery shopping, he did not demonstrate that his ability to walk diverged significantly from that of the general population."); *Cassimy v. Bd. of Educ. of Rockford Pub. Sch. Dist. No. 205*, 461 F.3d 932, 936 (7th Cir. 2006) ("More importantly, the evidence shows only that his condition impeded, but did not prevent, his ability to work."); *Brunker v. Schwan's Home Serv., Inc.*, 583 F.3d 1004, 1008 (7th Cir. 2009) ("A plaintiff who shows only intermittent difficulties rather than a substantial limitation on a major life activity cannot survive summary judgment.").

Moreover, no evidence of record shows how his respiratory issues impacted his ability to engage in daily activities or perform the essential functions of his position at Cardinal. Welch's evidence about biking slowly to work and being out of breath do not suggest that he suffers from a respiratory problem that *substantially* impacts any major life activity. As importantly, the record does not suggest that either defendant regarded him

as having a disability. Therefore, defendants are entitled to summary judgment because no reasonable fact finder could deem him disabled as defined by the ADA.³

Defendant ABR also seeks summary judgment because Welch was not performing an essential job function: attendance. Welch does not dispute that he had attendance issues during his full month of employment at Cardinal, nor that the notes about those absences indicate his absenteeism was unrelated to any disability. Regardless, "[t]he ADA does not protect persons who have erratic, unexplained absences, even when those absences are a result of a disability. The fact is that in most cases, attendance . . . is a basic requirement of most jobs." *Waggoner v. Olin Corp.*, 169 F.3d 481, 484 (7th Cir. 1999). ABR had a legitimate expectation that Welch arrive to work on time and appear for work as scheduled. And even after ABR notified Welch that he was not meeting expectations because he was so frequently late or absent, his attendance issues *worsened*. Welch seems to argue in opposition that staff at Cardinal came to understand and accept that he might be tardy. However, no evidence of record indicates that Welch requested nor received an attendance accommodation from any Cardinal or ABR employee because of his absenteeism. Furthermore, Welch does not dispute that even after he was explicitly warned that his repeated, late arrivals at and complete absences from work were a problem, he continued to be absent. Having failed to submit evidence that he was meeting ABR's or Cardinal's expectations, Welch's discrimination claim fails as a matter of law for this reason as well.

---

³ Defendants seek summary judgment on the additional grounds that Cardinal was not Welch's employer, and that Welch was not meeting ABR's reasonable expectations, but the court need not address them.

Although unnecessary given the rulings above, the court further finds no evidence suggests that absenteeism was not the genuine reason for his termination from employment at Cardinal. To prove his ADA claim, Welch was required to show that his employer was aware of his disability at the time it made the adverse employment discrimination. *Spurling v. C & M Fine Pack*, Inc. 739 F.3d 1055, 1060 (7th Cir. 2014); *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018). Even if the court accepts that both defendants were aware that Welch was suffering from certain respiratory issues during his employment, that knowledge is neither evidence of Cardinal's awareness of Welch suffering from an actual disability, nor of any disability being the cause of his repeated absenteeism or tardiness. Indeed, although Welch apparently rode his bike slowly enough to make him late for work, the overwhelming evidence is that he was still able to engage in that activity, and more importantly, riding his bike to work was *not* a required component of his job at Cardinal.

Nevertheless, Welch argues that the October 30 email from Cardinal employee Taylor is evidence of defendants' awareness of his disability, as well as of its refusal to accommodate that disability. Taylor's mere use of the word "accommodate" is not sufficient evidence to find that even she was aware that Welch suffered from a disability. To the contrary, Taylor's actual statement in the email is that Cardinal could not accommodate *his absences*, not that it would make no accommodation for a disability. And while Taylor acknowledged that five of his absences were ostensibly because he was sick, her email is not enough by itself to even infer she was aware Welch suffered from a condition that caused his chronic absenteeism. Nor does her use of that word permit a

13

reasonable inference that her reference to an accommodation as defined by the ADA. To show that either defendant was aware his respiratory issues were sufficiently chronic or serious enough to amount to a disability, much less operated under the assumption that he was disabled, Welch needed to come forward with at least some evidence that either defendant had reason to believe that Welch's respiratory issues substantially impacted his ability to get to work on time. Because he has not, defendants are further entitled to summary judgment on Welch's ADA claims for failure to prove a lack of reasonable accommodation of his claimed disability.

Finally, and relatedly, defendants are entitled to summary judgment because no reasonable factfinder could conclude that Welch was terminated because of a disability. Again, Welch does not dispute that in October alone, he was tardy eight times, absent for part of his shift three times, and he missed an entire shift three times. And again, even after Welch was warned that his absences were a problem, he continued to be tardy and absent, while providing neither defendant with information as to why he was absent, much less that he needed to arrive later to accommodate his respiratory problems. Moreover, Welch offers no explanation for the fact that at least some of his documented late arrivals and absences were wholly unrelated to any medical issue, having on multiple occasions given other excuses, such as attending court, oversleeping or having car troubles, and on two occasions, having offered no explanation for his absence at all. On these facts, therefore, a few other absences due to illness or needing to go to the doctor is not enough for a reasonable jury to conclude that he was terminated *because* of a disability. *Nese*, 405 F.3d 641. Although both defendants raise additional grounds for judgment in their favor,

14

the court has already more than adequately identified multiple reasons why plaintiff cannot go forward on his claim of discrimination.

## II.   ADA Retaliation

Defendant Cardinal is also entitled to summary judgment as to Welch's retaliation claim under the ADA. The ADA prohibits an employer from retaliating against an employee for filing a charge with the EEOC related to disability discrimination. 42 U.S.C. § 12203. To prevail on a claim of retaliation, the plaintiff must prove that: (1) he engaged in protected conduct; (2) he suffered a materially adverse employment action; and (3) there was a causal connection between the two. *Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792, 801 (7th Cir. 2018); *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1117 (7th Cir. 2001).

Initially, the court permitted Welch to pursue a retaliation claim against Cardinal because Seventh Circuit caselaw suggests the possibility of a retaliation claim for adverse actions unrelated to employment. *See Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 745 (7th Cir. 2002) (noting that Title VII's "provision regarding retaliation may intentionally be broader, since it is obvious that effective retaliation against employment discrimination need not take the form of a job action") (quoting *McDonnell v. Cisneros*, 84 F.3d 256, 258-59 (7th Cir. 1996)); *Aviles v. Cornell Forge Co.*, 183 F.3d 598 (7th Cir. 1999) (employee stated Title VII retaliation claim based on employer's alleged false report to the police that employee was "armed and [ly]ing in wait" outside the employer's building).

Cardinal now seeks summary judgment because it lodged a truthful report to law

15

enforcement. In support, Cardinal cites to the Seventh Circuit's opinion in *Aviles v. Cornell Forge Co.*, 241 F.3d 589, 592 (7th Cir. 2001) (*Aviles II*), in which the court held that "[a]s a matter of common sense, . . . . [i]f an employer had to face Title VII liability for truthfully reporting to the police that a disgruntled employee had threatened a supervisor and could be armed, we might discourage employers from taking the most prudent action to protect themselves and others in the workplace." *Aviles II*, 241 F.3d at 593. Cardinal's position is that its report to law enforcement was based on a good faith belief that Welch was violating the law.

Welch argues in opposition that Cardinal knew his communications were protected because the company was aware that he was alleging discrimination. Yet to prove his retaliation claim, Welch had to submit evidence permitting a reasonable factfinder to conclude that Cardinal reported his communications to law enforcement in a *bad* faith effort to punish Welch for pursuing his disability discrimination charge. No evidence supports that finding. Rather, the only evidence of record related to why Cardinal reached out to law enforcement is that the company was concerned that Welch's behavior amounted to extortion or otherwise posed an unreasonable threat to publicly embarrass it by any means possible.

In Wisconsin, one can be guilty of extortion by communicating malicious threats to accuse another of a crime or offense, or if he "threatens or commits any injury to the . . . business . . . or the profits or income of any business . . . with intent thereby to extort money or any pecuniary advantage whatever, or with intent to compel the person so threatened to do any act against the person's will." Wis. Stat. § 934.40(1). Here, Welch

16

demanded via letters, emails and increasingly overwrought, lengthy voice messages an increasingly exorbitant amount of money in exchange for his silence. Welch also explicitly threatened to notify the media and numerous entities about an employment dispute if the company did not agree to pay the settlement amount that he demanded, intimating just how damaging his complaints to various state and federal enforcement agencies would be to Cardinal's reputation if the company did not comply with his request. These communications go far beyond the type of pre-suit negotiation for an employment-related claim arising from a one-month period of employment. Moreover, Welch has not come forward with evidence that any Cardinal employee knew that he was not serious about using the press and various enforcement bodies to injure Cardinal (as opposed to just bringing a civil lawsuit) if it failed to meet his demand, nor offered any other evidence suggesting that Welch's original complaint about disability discrimination motivated Cardinal's report to law enforcement.

Welch further points to Cardinal's claimed failure to notify him that charges would not be filed, and its failure to stop the investigator from communicating with him as evidence of retaliation. While Cardinal took no further action with respect to any criminal investigation after reporting it to the police, the company had no duty or obligation to follow up with Welch or protect him from any interviews or follow-up by law enforcement after submitting what appears to be a good faith concern that it was being threatened with extortion. Moreover, although Welch's experiences with law enforcement could relate to

17

any damages he may have suffered as a result of Cardinal's decision to call the police, it is not itself evidence of retaliatory conduct.[4]

Welch also cites ABR's decision not to contact law enforcement as evidence of Cardinal's retaliatory conduct. But Welch sent Cardinal and ABR different communications and emails, so ABR's decision not to contact law enforcement is not evidence that Cardinal's stated reason for calling law enforcement was pretextual.

Finally, Welch points out that Cardinal did not contact law enforcement until after learning that Welch had filed a complaint with the OFCCP. However, there is no dispute that on December 27, before Welch filed his complaint, Cardinal's counsel had already informed Welch that it would be reporting him to law enforcement. While Cardinal did not actually contact law enforcement until January 2, when its counsel returned to work following the holidays, there is no evidence suggesting that Cardinal waited to contact law enforcement because it did not actually credit Welch's threats or believed him no longer to be a threat as of January 2. In short, no evidence would allow a reasonable jury to find that Cardinal's concern about Welch's threatening behavior was not genuine at the time it contacted law enforcement. Accordingly, Cardinal is entitled to summary judgment on Welch's retaliation claim as well.

---

[4] Welch also cites ABR's decision not to contact law enforcement as evidence of Cardinal's retaliatory conduct. But Welch sent Cardinal and ABR different communications and emails, so ABR's decision not to contact law enforcement is not evidence that Cardinal's stated reason for calling law enforcement was pretextual.

ORDER

IT IS ORDERED that:

1.  Defendants Cardinal I.G.'s and ABR Staffing's motions for summary judgment ('001 dkt. ##16, 23; '006 dkt. ##13, 20; '827 dkt. ##13, 20) are GRANTED.

2.  Plaintiff Jayte Welch's motion for summary judgment ('001 dkt. #36; '006 dkt. #33; '827 dkt. #33) is DENIED.

3.  Plaintiff's motions for a hearing ('001 dkt. #50; '006 dkt. #47; '827 dkt. #47) are DENIED.

4.  The clerk of court is directed to enter judgment in defendants' favor in each case and close them.

Entered this 16th day of December, 2022.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge